Thank you, Your Honors, and may it please the Court, and I'd like to reserve six minutes of my time for rebuttal. All right, watch the clock, and we'll try to help you along. All right, thank you. So this case concerns two separate sets of statements, one by AGI-U.S. and the other by Allianz SE, the parent company. I'm going to address the AGI-U.S. statements first. Defendants have made a variety of arguments, both below and before this Court, about why statements by AGI-U.S. describing its operations aren't actionable under 10b-5 by holders of shares of the parent company. The first argument, and the argument that the Court ultimately accepted below, is based on the presumption of reliance on the fraud of the market. We believe that this case is better analyzed under the purchaser-seller rule, as most recently discussed by Lucid in the Ninth Circuit, but since the Court did decide it's under reliance, I'll address that point first. The Supreme Court's recent Halliburton case explains the factors that have to be considered in the fraud on the market presumption, and those are that the alleged misrepresentations were publicly known, they were material, that the market for the company's stock was efficient, and that the plaintiff traded in the stock between the time the misrepresentation was made and when the truth was revealed. The fraud on the market presumption is based on the economic theory that in an efficient market, or that the markets for securities are generally efficient, and that in an efficient market, all material information to a company's financial prospects are incorporated into the price of the stock. It's a broad... So, Counselor, right off the bat, I've got a question about the trading. They didn't own anything from AGI. They didn't own anything directly from AGI, but Allianz owns AGI. Right, but they didn't trade in anything that... You're one step removed from a 10b-5 action against AGI. That's correct. We are... You didn't own any financial instrument that AGI was issuing. That is correct. We do not own any financial instrument owned by AGI. Although, that said, the fact that AGI is in the business of selling securities itself, we would argue, is not the main point here. The point is that these are statements about AGI U.S.'s operations. AGI is a subsidiary of Allianz. So, how is Allianz liable for AGI's statements? Well, so, as a control person of Allianz. Okay, but that's a completely different argument from where you started. Well, yes, we're saying that AGI U.S. is primarily liable for AGI U.S.'s statements. Did you sue AGI? AGI U.S., yes. Okay. But the statements in question aren't something you're... I think you may be right. Purchases tell a rule may be more clearly applicable to this than our court's decision in CCIV. I think it's a Roman numeral. Maybe more directly applicable. It found, out of blue chip, what it described as a bright line rule, that the stock in question means the security about which the alleged misrepresentations were made. And here, the alleged misrepresentations you're talking about weren't about the stock that your clients purchased. Well, what we would argue is that the statements were about the operations of AGI U.S., and AGI U.S. is a subsidiary of Allianz, and so... So you're trying to wipe out the bright line rule? I mean, that our court describes it as a bright line rule suggests something, to me, very different than what you're trying to argue. What we would contend is, really, the point is, I guess, even with a bright line rule, you have to determine where it applies. And if you say that statements about a subsidiary by the subsidiary fall outside of the bright line rule, and again, it was a subsidiary at all relevant times, unlike CCIV v. Lucid, where at the time of the statements, these were unaffiliated companies. But for instance, if you have... So for instance, the company Meta owns Instagram. If Instagram is a separate subsidiary, I'm not sure of the corporate structure, but say that it is, and they make a statement about Instagram, I think anyone would understand that that statement really is a statement about Meta. But the statements were about a security issued by the separate subsidiary. I mean, they weren't about the general operations. They were about, what, the structured alpha funds. And so you're basically claiming about statements about a different security having ultimately an impact. In factually, I can get that on the ultimate parent companies. In this case, ADR is not directly stock. But that doesn't seem consistent with the bright line rule that our court has said was identified in Blue Chip. Well, what I would argue is that this happens to be the unusual case where the subsidiary is selling a product. In this case, that product happens to be security. But they weren't just making statements about the structured alpha product, what's in the structured alpha product. The statements also concerned how AGI US personnel were supervised. And that is a statement about the... Not merely about. So we're not saying that the statement is misleading as to AGI or Allianz, the parent company, merely because it's describing the securities. It's describing the operations of the subsidiary. And by describing the operations of the subsidiary, that really is something that is about the parent company. So what we would say is, if AGI US, instead of selling securities, sold, say, life insurance, which isn't a security, and all the other facts were exactly the same, then this would be a statement about Allianz. But the mere fact that the product that it sells happens to also be a security shouldn't bar a statement that in any other context would be a statement about Allianz, merely because it happens that the product that it's selling is also a security. So that's why we think this is... It's the unusual case where, you know, it's a question of a parent and a subsidiary, but in this case, the thing that the subsidiary is selling happens to also be a security. But the statements that were made were about the operations of the subsidiary and the operation and how that subsidiary was supervised and its personnel. So that's the reason we would say that this case is distinguishable from Lucid and sort of falls on one side of the Bright Line Rule. So again, we're asking for... We aren't arguing against the Bright Line Rule. We're just saying that statements about a subsidiary fall within that Bright Line Rule, and these are statements about a subsidiary. Turning to defendants' other arguments, they also argued that the in-connection-with requirement precludes this. Again, we would say that, you know, Lucid is the correct sort of doctrinal hook to resolve this question, and that the in-connection-with argument largely mirrors their purchase-or-seller argument. And so, you know, we'd say the argument, the analysis... Again, we think that the cleanest thing to do would just be to analyze this under Lucid. Materiality, defendants argue that because the subsidiary was small, there was no materiality. So we would simply point out that, unlike in Lucid, there is no Bright Line Rule for materiality, and it depends on the circumstances. You know, statements about this small subsidiary made, you know, this much money versus that much money might not be material. But when a small subsidiary commits serious fraud that results in serious fines that are ultimately paid by the parent company, statements about their internal controls and statements about their level of supervision are material to the parent company. You know, and just for instance, you know, as we noted in the AIG bankruptcy, it was a small subsidiary that ultimately led to the downfall of the entire, you know, essentially threatened the viability of the parent company. And unless there's any questions on that, I will just say briefly, I just want to turn briefly to the statements by Allianz. And we would simply say that in that instance, the Allianz parent company's statements, the court found them to be too generic to be actionable. But we would point out that the company, that the statements didn't merely describe a three lines of defense model. They actually emphasized that this model ensured the timely flow of risk-related information. And so that, for that reason, we believe that those statements are far more concrete and particularized and therefore material than some of the statements that other courts have found not to be misleading. And simply the fact that a lot of companies use the three lines of defense model doesn't mean that statements about it are immaterial per se. All it means is this is an industry standard risk management model that many companies use it. And then the particular, but the particularities of how they're implemented could matter greatly. So for instance, companies, every company says their internal controls in the 10-K will say, will state that their internal controls are effective. But just because that statement is so commonplace doesn't mean it's per se immaterial, especially when there's a material weakness in those internal controls. And so we think this is an analogous situation. I have one question before you sit down. Yes. In your view, does the purchaser-seller rule apply the same to all of the different theories that Rule 10b-5 allows? I don't think that issue has been addressed by the court yet. We haven't seen a decision about a fraudulent scheme. You know, the purchaser-seller rule really only is addressed in misstatement cases. It hasn't addressed the fraud. My reading of those cases is that the purchaser-seller rule is based on the very last clause of in connection with the sale of a security, or I may have that not quite right, but which applies to all of the different theories, which is why I'm asking. Is there a reason to think that it applies differently to the different theories where it's based on language that applies to all of them? I am not aware of any authority to suggest that it would be otherwise. And I'll reserve the remainder of my time. Thank you. Good morning. May it please the Court, Robert Schiffer with Sullivan & Cromwell for Allianz SE. Allianz SE is one of the largest investment management companies in the world and the largest insurance company in the world, and it has more than 1,000 subsidiaries. What happened here was there was a fraud in connection with one business unit within Allianz, AGI US, and that fraud involved three rogue portfolio managers who clearly engaged in wrongdoing. Those funds, these structured alpha funds, generated 0.41% of the profits of Allianz SE. The plaintiff is a shareholder of Allianz SE, not an investor in the structured alpha funds. And I can represent to the Court that Allianz AGI US paid, and ultimately $6 billion was paid to both the government and to all the investors in the funds. And AGI US is now dissolved, and that's disclosed in the corporate disclosure statement we have. We disclosed that that was going to happen to the plaintiff back in 23, and they did nothing about it. It's been dissolved in Delaware. So really all we have left is a claim against Allianz SE. Now with respect, just for a second, the point is all the allegations that they're making about AGI US, they didn't invest in the structured alpha funds under this Court's decision in Lucid. Clearly a purchaser or seller rule applies in this case. You can't have a situation when you have a giant investment manager with funds all around the world, and someone who is not an investor in the funds, something goes on like what went on here, and they say, well, even though I didn't buy in the fund, I can bring a claim about fraudulent statements made about the funds. And the courts have said repeatedly there's a blight rule, and it does not apply. So as to Allianz SE, the only statements that plaintiffs focus on are the sorts of generic statements that courts have repeatedly held are not actionable. And these are the kinds of statements which, you know, banks make all the time. And we cited in our brief, and I believe it's Appendix A to our motion to dismiss, went through all the examples of companies which will disclose. They have what are called the three-line defense of compliance. So you have like at the business unit level, then the legal and compliance, then at the audit level. And companies make those kinds of disclosures all the time. Allianz SE did not guarantee to investors in its shares that those controls would work 100 percent of the time. It would be impossible to do it given the sheer size of the company. Well, counsel, one of the statements that I think is at issue is, quote, the risk of financial misstatement is mitigated by a system of internal controls covering financial reporting. It seems to me that that's objectively verifiable if the theory is that you told us that there was a system of internal controls and in fact there was none. In fact, Your Honor, that's exactly what's been alleged in other cases and been rejected. The plaintiff doesn't dispute that Allianz SE actually did have this system of controls and it was described as a global risk management framework that cut across all of its businesses. The claim is that the controls at the level of one business unit within one subsidiary of its more than thousand subsidiaries failed. And in that circumstances, courts have repeatedly rejected such claims. So, for example, in the case against Deutsche Bank, court dismissed it because there was no allegation that the controls didn't exist. And that was a case involving a $16 billion in money laundering. The Second Circuit in the Donska Bank, a case involving literally $230 billion of suspicious transactions, the court said that statements claiming that a company or stating that a company had three lines of defenses at a global level were too generic to be actionable. There was never a statement made at the global level or by Allianz SE about the controls surrounding the structured alpha funds at all, not one. The statements were about the entire company. And at that time, the structured alpha funds were within the broad umbrella. I'm not talking here about the purchase of seller rule. I'm talking about the statements made by Allianz and its, I guess, annual reports. And at one point, I'm not finding it at the moment, I recall the word insurer came up suggesting more than just a description of the risk control mechanism that was in place, but suggesting perhaps they didn't use the word guarantee, but insurer seems to be close to that. Well, all the statements were, and they turned out they were true, was that the company had a system of controls in place. And there's no dispute that the company did have a system of controls in place. Control systems fail and are not perfect, and investors know that. And that's why courts have repeatedly held that statements about, you know, the existence of a control system at a global multinational company are not to be viewed by the marketplace as being a guarantee. And if it were, you know, the securities laws would be a form of insurance whereby any time there was a failure of a control at a multinational company, someone could bring a claim. That's why the word insurer stuck in my head, because it begins to suggest that it is insuring. In two of the cases we cite, the Owen case and the Citigroup case, both cases use the word insurer in the disclosures. In both cases, the courts held that those statements were too generic to be actionable. And I think the same is true here. Again, it was not a disclosure. There were no rules around the structured alpha funds. You never have to worry about the structured alpha funds. There was never any disclosure about the structured alpha funds at all. That gets to the purchaser sale, but I'm not sure how Alianza's statements about its whole operation includes a carve-out for something in the form, in this case, of the structured alpha funds. Somebody reading Alianza's statements wouldn't assume that applies to anything less than the whole corporation, would they? There's no question that the statements applied globally, and would have picked up the AGI-US and ultimately the structured alpha funds. But there's no allegation that there weren't systems in place at AGI-US, that there weren't systems in place at the structured alpha funds. The only allegation is that the controls failed, and the Department of Justice actually found that the controls failed at the structured alpha funds. Well, I don't know that they found that. They said they didn't find any contrary evidence, but I don't think they made an affirmative finding that, in fact, there were no- I agree with that. I agree with that. Maybe I'm trying to be too candid almost with the court. But I think the point is, the other thing that the Department of Justice found, which is critical, is there was no evidence that anyone outside of the three wrongdoers at the structured alpha funds even knew about this wrongdoing. And one of the things the plaintiff doesn't do, and you'll notice, there's not an individual defendant in this case. And normally in a securities case, there's an individual defendant. There's no allegation that anyone other than the three bad actors knew about this fraud. So it's not a situation where, unlike in cases like In re Alphabet or Washington Mutual, where there were individuals who were named who were alleged to have known about the control failures. Here, the only thing that the plaintiff can say is, well, the controls didn't work. But investors know that controls sometimes don't work. And in fact, Allianz, in its annual report, made it clear, and this is at SER 32, that they aimed to avoid risks. They didn't promise that they would avoid all risks. And no reasonable investor would view a description of a control system at a global company like Allianz as a guarantee there wouldn't be any wrongdoing. If there were no controls, they'd have a case. But they don't make that allegation. I think it's important to also, just in terms of the case, number one, the judge correctly with respect to Allianz SE dismissed the claims with respect to this description of its global control framework, three-part control framework. And that was, and we think under settled law, this court should affirm on that. But in addition, the court didn't reach this, but on the question of scienter, there's literally no allegations of scienter in this complaint at all. And on an alternative ground, this court can dismiss the complaint because there's no allegations of scienter involving any human being in the complaint at all. Certainly not anyone from Allianz SE. And in fact, the Department of Justice, and this is SER 26, this is paragraph two of the information, said again, no evidence anyone in any other organization within the umbrella of Allianz SE was aware of or participated in the misconduct by the three rogue employees. And so the inability to allege anyone had scienter is a second ground for the dismissal of this complaint. Can I turn you to the fraud on the market issue? Just as a general matter, why wouldn't a statement made by a subsidiary be able to influence the value of the parent? It certainly could, Your Honor. We don't dispute that. So as a general matter, you don't dispute that. You just say it doesn't work here. Well, a couple of things here. Some of the statements that they talk about, for example, the master cop statement, one of the wrongdoers made the statement, this is Greg Tornant, that Allianz was the master cop on the beat. That statement was only made to one investor in the structured alpha fund, so it wasn't broadly disseminated. But moreover- So focusing on the public statements. Public statements could be statements that could impact this company's stock price. But here, the statements that they're talking about were not material to the shareholders of Allianz SE. The shareholders of Allianz SE, which has 1,000 subsidiaries and thousands of investment products, are not focused on the hedging strategies that are employed by one complex options trading strategy, which is what we're talking about here. I guess that's what I'm sort of struggling to figure out in my mind. The whole fraud on the market theory is a presumption that can apply to show reliance without showing individualized reliance. The idea being that if there's information out in the market, it is, and it's public, it is influencing choices. And so if we have some public statements by this subsidiary, AGI, out there, why doesn't that presumption apply that those public statements are influencing people who are making decisions about the parents' securities? There's no question that those statements could be relevant to a fraud on the market analysis, but the court can dismiss here because of, number one, the purchaser or seller requirement, which was referenced by Judge Fischer, was not satisfied because they didn't invest in the shares about which the statements were made. The statements were made about these private funds that you had to be an institutional investor to buy. So they invested in Allianz S.E. stock plaintiff, the single plaintiff in this case. Second, the statements that would be made about this one investment product, of the thousands of investment products that are sold by Allianz S.E., we don't think that would be material to a shareholder of Allianz S.E. Do you contend that plaintiffs didn't actually suffer a loss? I mean, I didn't go deeply into that, but they do allege that Allianz's ADR value was affected after the underlying fraud with regard to the structured alpha funds was revealed. Well, the mere fact that the stock price went down doesn't establish that the information was material, and this court held that in the Hewlett-Packard case, H-45, F-3, and 12-7. That's sufficient evidence, but at this point, we're not at that stage. We're here on a motion to dismiss, and they've alleged they suffered a loss. They've alleged a causal connection, so it was material. No, but the information, that's after the fact. You have to look at the information that they claim was misleading. The information they claim was misleading was the description of the hedging strategy for one complex option strategy that generated 0.41% of the profits of the company. They told us it cost Allianz $6 billion. It starts to sound material. Well, that's after the fact, though, and you have to look at it. You have to look objectively whether that would be material at the outset, but in any event, it doesn't mean— I mean, if you look at a car defect, what bad things can happen from a defect? And it turns out if the bad things are going to be real serious, then maybe that's something that should be identified as material at the beginning. But again, those disclosures were not made by Allianz SC. They were made by— Oh, that distinction I understand, but the argument that it wasn't material—I'm having more trouble given that it did seem to have a big impact on the parent. $6 billion is a kind of material amount of money. That's what ultimately it cost Allianz, so maybe it was material. Well, Your Honor, in any event, I think they do not satisfy the purge. We don't believe the statements were material because you have to look at them at the time the statements are being made, and a statement about the hedging strategy of one investment product, of thousands of investment products, of a giant investment management company, an insurance company, is not material to the shareholder who's buying at the top of the organization. But beyond all that, as you correctly, I think, identified before, this Court's decision in Lucid makes it quite clear that you've got to allege that you were—if the misstatement was about the security, you've got to satisfy the purchaser or seller requirement, and they didn't buy any of the shares. They were not investors in the structured alpha funds. Beyond all of that, I think it's important to keep in mind that the statements that they're focusing on with respect to AGI-US are statements that were about this fund that they didn't invest in, and in any event, with respect to Allianz SE, which is the only defendant that's still here, the only hook they would have would be some sort of a control person liability theory, if they could establish a primary violation, which we don't think they can, and then they haven't pledged sufficiently, we don't believe, that Allianz SE exercised control over AGI-US, which was a separate company from—was a subsidiary, but separately run. So we think the court should affirm the decision below, which was well-reasoned, and primarily the statements against Allianz SE, these generic statements, are not actionable, and again, the purchaser-seller rule should deem why this case should be dismissed. Thank you. Do you have time for a rebuttal? Thank you, Your Honor. So just, first thing, I know Your Honor brought up that Allianz, the parent company, did use the word insure. I wanted to read the exact quote. It was that Allianz—so the statement was that they, quote, insure the accurate and timely flow of risk-related information and a disciplined approach towards decision-making and execution at both the global and local level. That appears in the excerpts of record 59, 64, and 65. Those are paragraphs 102 and 114 of the complaint, I believe. And we'd say that these, you know, these are very concrete statements. They didn't have to say insure. They could say helps to support, or some sort of softer language, but they chose to use this more definitive language. And in doing so, they made a material statement. And, you know, it does go directly to—so it does go directly just to the way that there were problems with the three lines of defense model at AGIUS. Specifically, the complaint notes, and this is at—I'm looking at—it's quoted several times, but I'm looking at page 63 of the excerpts of record, that no one in the control function sought to verify that Tornant and his colleagues were adhering to the hedging strategies they represented to investors they would follow or to the alpha targets they had promised. And so this does go to the accurate and timely flow of risk-related information and a disciplined approach towards decision-making. So, you know, the misrepresentation does go exactly to how the statements were misleading. Now, defendants pointed out that the DOJ said no evidence was found that anyone knew of the fraud. But I do want to distinguish between two things. There was the fraud they were committing, and then there was the implementation of the three lines of defense model. And no one said—and there wasn't any claim by the DOJ that, you know, that no one knew about these deficiencies in the three lines of defense model. So I think those are two things to distinguish, because the statements we're alleging are not— Do you allege that they knew? We allege that the responding at Superior applies, and we allege that there were red flags because the AGI U.S. Risk Management directly reported to a member of the Board of—a member of the Board of Management. So we have center allegations regarding— But you haven't alleged that when somebody wrote, we can ensure the, you know, the quality of our auditing controls, that they knew that there were problems and that that statement was false? We argue that, again, that a responding at Superior theory could apply, and we also allege that we— Are you answering his question no? I'm sorry. Can you name an official or identify anybody by office that would have known that at the time that that was written by Allianz, that they knew that there were problems with AGI and that there was fraud going on? We do not—we don't make a direct allegation of knowledge. What we allege is that there were red flags, and these were reported to Jacqueline Hunt, who was the—or in the—there was reporting—let me rephrase—that as to AGI U.S., the line of reporting was to Jacqueline Hunt, who was a member of the Board of Management, and so that's— Right, but it would be somebody at Allianz because Allianz is the one who made the statement. Is there anybody at Allianz who was involved in preparing that statement about using the ensure that at that time would have known that there was fraud going on at AGI? We don't allege that anyone knew that there was fraud going on at AGI, but again, the statement isn't merely that there—you know, we don't think it's necessary to show that they knew that there was fraud going on at AGI to show that they knew that the three lines of defense model weren't working, and so I would distinguish between— Well, do you allege the latter? We allege that there were red flags that— That's not the same. Understood. We don't—we don't allege directly that anyone was specifically informed. We allege— And have you made allegations that would make such a conclusion plausible? We allege—we argue that the— I'm hearing no. We would argue that the red flags make the conclusion plausible if they were aware of deficiencies in the three lines of defense model. All right, unless there are any other questions, you've run out of time. All right, thank you, counsel. We appreciate counsel's argument. The matter of Weir v. Allianz SE and Allianz Global Investors is submitted. Thank you. Thank you. And that concludes our sitting for the week. I'll rise. This court, for this session, stands adjourned.
judges: CLIFTON, BYBEE, FORREST